FILED 07 AUG '24 14:55 USDC-ORP

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

**UNITED STATES OF AMERICA**

**v.**

**SHERI DOVER,**

**Defendant.**

**3:24-cr-00303-AN**

**INDICTMENT**

**18 U.S.C. § 1343**
**18 U.S.C. § 641**

**THE GRAND JURY CHARGES:**

**INTRODUCTORY ALLEGATIONS**

At all times relevant to this Indictment:

1. Defendant **SHERI DOVER** was the owner and President of PDX Code Guild LLC, a non-institute of higher learning, non-college degree school located in Portland, Oregon, that purported to provide technical and computer training courses and certifications.

**Veterans' Tuition Assistance**

2. Under Title 38, United States Code, Chapter 33 – the "Post-9/11 GI Bill" – the United States provided educational assistance by paying for tuition, housing costs, and other educational costs and fees for veterans of the United States Armed Forces and other eligible persons that met certain qualifications. Generally, the Post-9/11 GI Bill applied to individuals who entered military service or actively served in the military after September 11, 2001, and who

otherwise qualified for assistance based upon their length of service, the nature of their discharge, and other service-related factors. As of October 1, 2011, the United States Department of Veterans Affairs ("VA") began paying Post-9/11 GI Bill benefits to individuals pursuing non-institute of higher learning, non-degree programs, including at non-accredited, non-college degree schools or programs, like PDX Code Guild.

3. Education benefits under the Post-9/11 GI Bill were paid directly to the school providing the course in the amount allowable under the statute. Before assistance was paid out under the Post-9/11 GI Bill, however, the school had to certify the individual's enrollment in the approved program. Other benefits, including a housing allowance, funds for books and supplies, and other educational costs, were paid directly to the veteran.

4. Further, under Public Law 115-48 – the "Harry W. Colmery Veterans Educational Assistance Act of 2017" – the VA provided educational assistance by paying for tuition and housing costs for a full-time high tech training program for veterans of the United States Armed Forces and other eligible persons that met certain qualifications. This was also known as the Veteran Employment Through Technology Education Courses program or VET TEC program. If certain conditions were met and the veteran was accepted into a VA approved program, then the VET TEC training did not count against the veteran's GI Bill entitlement.

5. For payments made under the Post-9/11 GI Bill, the VA paid the "actual net cost for in-state tuition" charged by a school after it had applied "any waiver of, or reduction in, tuition and fees; and any scholarship, or other Federal, State, institutional or employer-based aid or assistance." 38 U.S.C. § 3313.

6. The VA would not approve the enrollment of any veteran or other eligible person in any course for any period during which more than 85 percent of the students enrolled in the

course were having all or part of their tuition, fees, or other charges paid to or for them by the school or VA. *See* 38 C.F.R. 21.4201(a). Failure to adhere to this requirement, which was commonly referred to as the "85/15 Rule," would result in the school's future enrollments being suspended from receipt of VA educational assistance. *See* 38 C.F.R. 21.4201(g)(2).

7. Further, when calculating 85/15 Rule, the school had to identify students as supported or non-supported. Supported students counted toward the 85 percent threshold. Supported students were: (a) veterans receiving VA benefits, and (b) students receiving institutional aid, where the institution's policy for determining the recipients of such aid was unequal with respect to veterans and non-veterans. Non-supported students were: (a) non-veteran students not receiving aid from the school, (b) students receiving federal aid, other than VET TEC benefits, and (c) students receiving assistance provided by the school, if the institutional policy for determining recipients of such assistance was equal with respect to veterans and non-veterans.

**<u>School Certifying Official</u>**

8. Each school in receipt of VA tuition assistance funds, including from the Post-9/11 GI Bill and VET TEC program, had to designate a School Certifying Official ("SCO") who was responsible for the certification of beneficiaries of VA education benefits. An SCO was required to submit initial enrollment documents for veterans within 30 days of the beginning of the term, keep the VA informed of the enrollment status of veterans, maintain current knowledge of the VA rules and benefits, maintain records of veteran and non-veteran students, and make all records available for inspection at any time by the VA.

9. VA-ONCE was a web-based system, with servers based in Pennsylvania, that allowed an SCO to create and transfer enrollment information directly to a VA Regional Office

for processing. The VA-ONCE system required the SCO to provide a username and password to access the system and transmit data to the VA. Each SCO had a unique username and password which allowed the SCO to access the system.

10. An SCO had to complete VA Form 22-1999, VA Enrollment Certification, for each veteran who would receive VA tuition assistance. Using this form, an SCO certified the course in which the veteran was being enrolled, the start and end dates of the enrollment period, the number of hours per week the veteran would attend class, and the cost of tuition for the course. The SCO was responsible for notifying the VA of any changes in the information certified.

11. The SCO had the option of completing either a hard copy VA Form 22-1999 or the electronic version of the form available through the VA-ONCE system. The hard copy form required the SCO to provide the SCO's signature, while the electronic form required the SCO to provide an electronic signature. The date of the electronic signature and the date the document was electronically received by the VA were recorded on the enrollment certification document. By signing a VA Form 22-1999, either by hand or electronically, the SCO certified that the veteran's course or courses were "generally acceptable to meet requirements for the student's educational, professional, or vocational objective," and that all the "85-15 ratio requirements [were] satisfied."

**COUNTS 1-5**
**(Wire Fraud)**
**(18 U.S.C. § 1343)**

12. The allegations in paragraphs 1 through 11 of this Indictment are incorporated as though realleged herein.

13. From not later than a date on or about April 1, 2017, and continuing up to and including January 1, 2023, in the District of Oregon and elsewhere, defendant **SHERI DOVER**, knowingly and intentionally devised and intended to devise a material scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, promises, and by concealment and omission of material facts.

**THE SCHEME**

14. From not later than a date on or about April 1, 2017, and continuing through at least January 1, 2023, defendant **SHERI DOVER** knowingly devised and executed, and intended to devise and execute, a material scheme to defraud the VA and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

15. Specifically, **SHERI DOVER** charged the VA full tuition for students who received a tuition discount. On more than one occasion, **SHERI DOVER** represented the full tuition amount to the VA, but then discounted the remainder of the tuition owed by the student or charged VA full tuition and waived the entire remainder of the tuition owed by the student. This was a direct violation of 38 U.S.C. § 3313 which required when certifying tuition and fees to the VA, a school must first consider any tuition and fees specific scholarships. As a result of **SHERI DOVER**'s fraudulent representations, PDX Code Guild received VA educational funds, including Post-9/11 GI Bill and VET TEC benefits in excess of those it was entitled to.

16. Further, **SHERI DOVER** provided the VA with false information regarding the number of non-supported, non-veteran students enrolled in each course at PDX Code Guild and falsely certified that the school was complying with the 85/15 regulation.

## MANNER AND MEANS

It was part of this scheme that:

17. On May 1, 2019, **SHERI DOVER** initially applied to the VA for PDX Code Guild's participation in the VET TEC program using the VET TEC Participation Agreement. The VA granted PDX Code Guild VET TEC certification on July 20, 2019. **SHERI DOVER** reapplied for certification in the VET TEC program twice: first on October 25, 2020, and again on August 31, 2021. In all three VET TEC Participation Agreements, **SHERI DOVER** falsely agreed that PDX Code Guild "Under this PPA [*i.e.*, Program Participation Agreement], the Facility agrees to comply with the laws, regulations, and policies governing the VET TEC Pilot Program." Further, **SHERI DOVER** falsely agreed that PDX Code Guild would "charge Veteran students the same (or less) tuition and fees as it charges non- Veteran students." Additionally, **SHERI DOVER** acknowledged VA "shall not approve an enrollment in any course for an eligible Veteran for any period during which more than 85 percent of the students enrolled in the course are having all or part of their tuition, fees or other charges paid for them by the educational institution or by VA."

18. As part of the scheme, **SHERI DOVER** would enroll VA-supported students for courses and report a list price for tuition to the VA. Once the VA had paid the percentage of tuition benefits that the VA-supported student was entitled to, **SHERI DOVER** would discount the student's tuition so that the VA's payment would cover the entirety of the student's now discounted tuition. **SHERI DOVER** would not report the discount to the VA.

19. For example, on or about July 15, 2020, VA-supported student (Student 1) was approved for enrollment in the July 20, 2020, 18-week Python course by **SHERI DOVER**. PDX Code Guild reported the tuition to the VA as $16,500, but then discounted Student 1's tuition to

$8,250. The VA paid $8,250 based on PDX Code Guild's representation that the full tuition for Student 1 was $16,500. Student 1 made no additional payments to PDX Code Guild, and the discount was not reported to the VA.

20. Further, **SHERI DOVER** provided the VA with fraudulent information regarding the number of non-supported students enrolled in each course at PDX Code Guild and falsely certified that PDX Code Guild was in compliance with the 85/15 rule.

21. To attempt to meet the 85/15 requirement, **SHERI DOVER** would count non-veteran students as non-supported students, even where those non-veteran students were receiving tuition discounts from PDX Code Guild. These tuition discounts were not made available on an equal basis to students receiving VA-assistance and **SHERI DOVER** decided who to offer tuition discounts to.

22. Further, in one class, **SHERI DOVER** herself enrolled and attended the course tuition free using the alias "Anne Smith" to increase the number of non-veteran students in the course. **SHERI DOVER** falsely represented to the VA that this course was 85/15 compliant.

23. VA records show that between 2019 and 2022, **SHERI DOVER**, as primary SCO for PDX Code Guild, submitted at least 546 VA Forms 22-1999 to certify that a veteran enrolled in and attended PDX Code Guild courses via the VET TEC program. The submitted VA Forms 22-1999s show the enrollment certifications were received electronically through the VA-ONCE system and signed electronically by **SHERI DOVER**.

24. VA records show between 2017 and 2022, **SHERI DOVER**, as primary SCO for PDX Code Guild, submitted at least 240 VA Forms 22-1999 to certify that veterans enrolled in and attended PDX Code Guild courses via the Post-9/11 GI Bill program. The same records

show that the enrollment certifications were signed electronically by **SHERI DOVER** and transmitted electronically to the VA-ONCE system from Oregon.

**WIRE FRAUD**

25. On or about the below-listed dates in the District of Oregon and elsewhere, defendant **SHERI DOVER**, having knowingly devised and intending to devise a material scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowingly caused the following interstate wire communications, to wit, transfers from the U.S. Treasury system account in Kansas City, Missouri to PDX Code Guild's SELCO Community Credit Union account in Oregon ending in 7058-0010:

| COUNT # | DATE | AMOUNT |
|---|---|---|
| 1 | July 27, 2020 | $8,250.00 |
| 2 | May 3, 2021 | $10,685.96 |
| 3 | September 16, 2021 | $6,762.14 |
| 4 | October 18, 2021 | $19,600.00 |
| 5 | October 19, 2021 | $19,600.00 |

All in violation of 18 U.S.C. § 1343.

**COUNT 6**
**(Theft of Government Funds)**
**(18 U.S.C. § 641)**

26. Between on or about September 1, 2019, and continuing through on or about January 1, 2023, in the District of Oregon, defendant **SHERI DOVER** did knowingly and willfully steal and convert to her own use or the use of another, money of the Department of Veterans Affairs, a department and agency of the United States, to wit; by receiving Department

of Veterans Affairs tuition payments in an approximate amount of at least $1,500,000, based on fraudulent representations and concealments;

All in violation of 18 U.S.C. § 641.

Dated: August 6, 2024

A TRUE BILL.

[redacted]

OFFICIATING FOREPERSON

Presented by:

NATALIE WIGHT
United States Attorney

ANDREW T. HO, OSB #185047
Assistant United States Attorney